UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHRISTOPHER BARBEAU<br>*Plaintiff*,<br><br>v.<br><br>SIEGE TECHNOLOGIES, LLC<br>*Defendant*. | No. 1:24-cv-682-CMH-WEF |

### REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Christopher Barbeau's Motion for Default Judgment as to Defendant Siege Technologies, LLC (Dkt. 8). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned United States Magistrate Judge has reviewed the Motion and relevant pleadings and is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. For the reasons set forth below, the undersigned recommends **GRANTING IN PART** Plaintiff's Motion for Default Judgment (Dkt. 8) and awarding Plaintiff (1) $169,800 in trebled VWPA statutory damages; (2) attorneys' fees and costs; and (3) post-judgment interest.

**I.    PROCEDURAL HISTORY**

Plaintiff Christopher Barbeau initiated this civil action against Defendant Siege Technologies, LLC ("Siege"), his former employer, on April 25, 2024 (Dkt. 1) ("Complaint"). The Complaint asserted causes of action for violation of the Virginia Wage Payment Act ("VWPA") and breach of contract arising out of Siege's failure to pay earned salary wages, 401(k) contributions, Health Savings Account ("HSA") deductions, and paid time off ("PTO") in the total amount of $56,600. (*See generally id*.). For relief, Plaintiff sought $56,600 actual damages, plus

statutory liquidated treble damages pursuant to the VWPA, fees and costs pursuant to the VWPA, and pre- and post-judgment interest.[1] (*Id.*). The Clerk of Court issued summons as to Siege on April 26, 2024, and the executed service return indicates that Siege was timely served with process via its registered agent on May 29, 2024 (Dkts. 3, 4).

Pursuant to Federal Rule of Civil Procedure 12(a)(1)(i)'s requirement that, absent waiver of service, a defendant must serve a responsive pleading within 21 days after being served with a summons and complaint, Siege had until June 19, 2024 to respond to the Complaint. Siege, however, did not appear in this matter in any manner before July 8, 2024 (or any time thereafter), when Plaintiff requested that the Clerk enter default against Siege for failure to plead or otherwise defend within the meaning of Rule 55(a). (Dkts. 5, 6). The Clerk of Court entered default as to Siege on July 12, 2024 (Dkt. 7).

Thereafter, Plaintiff moved for default judgment pursuant to Rule 55(b) against Siege on February 14, 2025. (Dkt. 8). The undersigned held a hearing on Plaintiff's Motion on February 28, 2025, at which Plaintiff, by counsel, appeared, but no one appeared on behalf of Defendant. (Dkt. 12). The undersigned took Plaintiff's Motion under advisement to issue this report and recommendation and further directed Plaintiff to file any desired supplemental briefing on the issue of whether his requested damages are properly recoverable under the VWPA. (Dkt. 13). Plaintiff filed a supplemental memorandum addressing the scope of damages available under the VWPA on March 11, 2025. (Dkt. 14).

The undersigned's review of the entire record as of the date of the filing of this report and

---

[1] Plaintiff's request for relief on the current Motion differs slightly from the Complaint but does not exceed what is prayed for in the Complaint. Additionally, Plaintiff does not request default judgment on the breach of contract claim and therefore the undersigned recommends that claim be dismissed without prejudice.

2

recommendation confirms that Defendant has never responded to the Complaint or otherwise participated in this civil action in any way. Further, Plaintiff's Motion is now ripe for disposition.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure "contemplates a two-step procedure" for obtaining a default judgment. First, the plaintiff must request entry of default by the Clerk of Court against the defendant for "fail[ure] to plead or otherwise defend," by which liability is admitted. *See* FED. R. CIV. P. 55(a); *Fidrych v. Marriott Intr'l, Inc.*, 952 F. 3d 124, 130 (4th Cir. 2020). Next, the plaintiff must apply to the Court for the actual default judgment, which "converts the defendant's admission of liability into a final judgment that terminates the litigation." *Mickalis Pawn Shop, LLC*, 645 F. 3d at 128; FED. R. CIV. P. 55(b)(2).

"A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right." *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d, 731 (E.D. Va. 2014). On a motion for default judgment, the defendant in default is deemed to have admitted the complaint's non-conclusory "well-pleaded allegations of fact" and the Court is to determine whether those facts state a valid facial claim for relief as a matter of law. *GlobalSantaFe Corp. v. Globalsantafe.com,* 250 F. Supp. 2d 610, 613 n.3 (E.D. Va. 2003); *Grabert*, 8 F. Supp. 3d at 736, 739 (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face); *Burbach Broad Co. of Delaware v. Elkins Radio Corp.*, 278 F. 3d 401, 406 (4th Cir. 2002) (court will "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor"). Damages alleged in the Complaint, however, are not deemed admitted by a defaulting

defendant: rather, the Court "must make an independent determination regarding damages," including by reliance on affidavits or documentary evidence in the record. *See Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020); FED. R. CIV. P. 8(b)(6).

## III. JURISDICTION AND VENUE

In this case, the Court must have both subject matter jurisdiction and personal jurisdiction over Defendant, and venue in this judicial district must be proper before the Court can render a default judgment. The undersigned finds that all such requirements have been satisfied.

### A. Subject Matter Jurisdiction

The undersigned finds that the Court has proper diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Complaint asserts Virginia statutory and common law causes of action with an amount in controversy of at least $169,800 (the amount of the claimed VWPA treble damages), which is in excess of the $75,000 statutory minimum.[2] 28 U.S.C. § 1332(a). There is further complete diversity of citizenship between the parties, as Plaintiff is a natural person citizen of Virginia and Defendant is a citizen of Texas.[3] (Complaint ¶¶ 1–3). Thus, there is proper diversity subject matter jurisdiction in this case.

---

[2] The undersigned finds the amount-in-controversy to be claimed in good faith. *Wiggins v. N. Am. Equitable Lif. Assur. Co.*, 644 F. 2d 1014, 1016 (4th Cir. 1981).

[3] Plaintiff appears to suggest that there is diversity in this action based on Siege being a New Hampshire LLC with principal office in Rome, New York. (Complaint ¶ 2). However, these facts are not relevant to the citizenship of an LLC like Siege for diversity subject matter jurisdiction purposes, which is determined by the citizenship of all of its members. *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F. 3d 101, 103 (4th Cir. 2011).

A search of the New Hampshire Secretary of State Business Information database reveals that Siege's sole member is "Braes Sneakers LP," with a business address in Houston Texas. https://quickstart.sos.nh.gov/online/BusinessInquire/BusinessInformation?businessID=POz9xDM9cJs%3D. The citizenship of "Braes Sneakers, LP," is not entirely certain. However, in 2022, District Judge Ellis presided over and ultimately issued a summary judgment opinion disposing of claims of tortious interference with contract in *Chertoff Capital, LLC v. Braes Capital, LLC*, in which "Braes Capital, LLC" was described as having acquired "Siege Technologies" through a special purpose vehicle in 2019. No. 1:20-cv-138, 2022 WL 1720360, at *3 (E.D. Va. May 27, 2022). The Complaint in that case indicates that the members of "Braes Capital" were all citizens of Texas. Accordingly, the undersigned finds that Siege, via its member Braes, is a citizen of Texas for purposes of ascertaining diversity jurisdiction.

### B. Personal Jurisdiction and Service

The undersigned finds that the Court has proper personal jurisdiction over Defendant. The standards of federal due process and the forum state's long-arm statute must be satisfied for a federal court to have personal jurisdiction over a party. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F. 3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib.*, 682 F. 3d at 301 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F. 3d 707, 711 (4th Cir. 2002)). Further, "a defendant should be able to anticipate being brought to court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ePlus Tech., Inc. v. Aboud*, 313 F. 3d 166, 176 (4th Cir. 2002) (internal quotation marks and citation omitted). Virginia's long arm statute, Va. Code Ann. 8.01-328.1, provides for personal jurisdiction to the extent that federal due process permits, thus requiring only one inquiry. *Hilton Franchise Holding, LLC v. HC Southfield LLC*, No. 1:19-cv-610-LO-TCB, 2021 WL 5194109, at *2 (E.D. Va. Mar. 24, 2021), *R&R adopted*, No. 1:19-cv-00610, 2021 WL 5192362 (E.D. Va. Apr. 12, 2021)

During the period relevant to this action, Siege continuously maintained an office within Fairfax County, Virginia and employed Plaintiff to perform duties for Defendant within the Commonwealth of Virginia. (Complaint ¶¶ 4–5, 11). The acts and omissions giving rise to this

action substantially occurred within the Commonwealth of Virginia. (*Id*. ¶ 6). Accordingly, the undersigned finds that specific personal jurisdiction based on conduct connected to this lawsuit exists as to comport with due process and the Virginia long arm statute. For these reasons, the undersigned finds that the Court has personal jurisdiction over Siege.

Service of process on Defendant was also proper. "Service of Process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that person has not been served." *Pardazi v. Cullman Medical Center*, 896 F. 2d 1313, 1318 (11th Cir. 1990); *In re Outboard Marine Corp.*, 369 B.R. 353, 358 (Bankr. N.D. Ill. 2007) (collecting cases) ("As a result, a default judgment obtained after improper service is void."). Here, the executed service return filed June 21, 2024 (Dkt. 4) indicates that Siege was served with process via its registered agent on May 29, 2024. Service was thus proper pursuant to Rule 4(h)(1)(B).

C.  Venue

The undersigned finds that venue in this district is proper under 28 U.S.C. § 1391(b)(2). The Eastern District of Virginia is a district in which a "substantial part of the events or omissions giving rise to the claim occurred," as the relevant underlying actions and omissions regarding Plaintiff's employment and wages occurred in Fairfax County, the location of Defendant's office, which is within this judicial district. (Complaint ¶¶ 4–6).

IV.  **FACTS ALLEGED IN THE COMPLAINT AND DEEMED ADMITTED**

Here, the Clerk properly entered default as to Siege based on its failure to plead or defend in this action within the meaning of Rule 55. (Dkt. 7). The following facts alleged in the Complaint are now deemed admitted by Siege.[4]

---

[4]  To the extent that the undersigned found any allegations in the Complaint not to be well-pleaded and admitted, the undersigned omitted such facts from this section and will discuss them below only as necessary to the analysis of Plaintiff's claims.

Plaintiff Christopher Barbeau was employed by Defendant Siege as a staff engineer, performing employment duties for Siege's primary benefit within the Commonwealth of Virginia, from about June 2021 through about May 2023. (Complaint ¶ 11). During the 2021 calendar year, Defendant promised to pay Plaintiff a salary at the annual rate of $135,000. (*Id.* ¶ 12). In about January 2022, Defendant promised to pay Plaintiff an increased annual salary of $140,000. (*Id.* ¶ 13). Also, during Plaintiff's period of employment, as part of Plaintiff's promised and mutually agreed upon compensation plan, Defendant offered Plaintiff:

- a 401(k)- retirement plan. (*Id.* ¶ 15);
- an opportunity to deduct wages and for Defendant to pay the same directly into Plaintiff's HSA (*Id.* ¶ 17); and
- the opportunity to earn and accrue PTO, pursuant to the policy of paying Plaintiff the full monetary value of any unused PTO at the time of the conclusion of Plaintiff's employment (*Id.* ¶ 19).

However, Defendant did not fulfill these promises. Instead, during the period of Plaintiff's employment, without right, excuse, or justification, Defendant:

- withheld and/or failed to pay Plaintiff earned and promised salary wages in the gross amount of about $9,000 (*Id.* ¶ 14);
- withheld and/or failed to pay Plaintiff earned and promised 401(k) matching contributions to Plaintiff's 401(k)-retirement plan in the amount of about $39,000 (*Id.* ¶ 16);

---

The undersigned finds that Siege's various failures to pay discussed in this section are not deemed admitted for purposes of determining damages but are relevant to liability given the nature of the action.

- deducted money from Plaintiff's earned wages but then failed to pay the same to Plaintiff's HSA account in the amount of about $600 (*Id*. ¶ 18); and

- following the conclusion of Plaintiff's period of employment, withheld and failed to pay Plaintiff earned PTO wages in the amount of about $8,000 (*Id* ¶ 22).

All told, Defendant failed to pay about $56,600 to Plaintiff. (*Id*. ¶ 23).

## V.   SUFFICIENCY OF CLAIMS PURSUANT TO RULE 12(B)(6)

Plaintiff now moves for default judgment on the Complaint. Because the Complaint states a claim in Count I against Defendant for violation of the VWPA on all amounts sought, the undersigned recommends that the Court grant default judgment as to Count I and otherwise dismiss without prejudice Count II (breach of contract).

### A.  Count I (VWPA) States a Claim Against Siege.

Count I of the Complaint asserts a claim against Siege for violation of the Virginia Wage Payment Act. (Complaint ¶¶ 24–26). Plaintiff states that Defendant, without legal excuse or justification, withheld and failed to fully and timely pay Plaintiff all earned and promised wages for work performed for Siege in the amount of about $56,600, which is comprised of unpaid salary wages, 401(k) contributions, HSA deductions, and unused accrued PTO. *Id*. Plaintiff further contends that this failure was knowing, intentional, and malicious. (*Id*. ¶ 26).

In relevant part, the VWPA requires Virginia employers to pay salaried employees at least once per month and hourly employees at least every two weeks or bi-monthly and upon termination of employment, pay an employee "all wages or salaries due him for work performed thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Va. Code. Ann. § 40.1-29(A). An employee may file a private civil action for violation of the VWPA "if an employer fails to pay wages to [him] in

accordance with [the VWPA] . . . and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in [Va. Code Ann. § 40.1-29(G)], and reasonable attorney fees and costs."[5] *Id*. § 40.1-29(J). "If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." *Id*.  The VWPA provides that a person acts "knowingly" if they "with respect to information, (i) [have] actual knowledge of the information, (ii) act[] in deliberate ignorance of the truth or falsity of the information, or (iii) act[] in reckless disregard of the truth or falsity of the information," but there is no need to prove specific intent to defraud. *Id.* § 40.1-29(K).

Here, Plaintiff has stated a claim against Defendant for violation of the VWPA based on Defendant's failure to pay him wages due upon the conclusion of his employment in 2023. As discussed below, Defendant's failure to pay Plaintiff's salary, HSA deductions, unused, accrued PTO, and 401(k) matching contributions are cognizable under the VWPA.

First, Defendant is liable for its failure to pay Plaintiff his earned and promised salary upon the end of his employment.  Although the VWPA by its text provides only for a private right of action to recover due "wages," the Court of Appeals of Virginia has recognized that the cause of action extends to "salaries" too, because to construe the VWPA as "provid[ing] a robust array of remedies for hourly employees while providing no remedy for salaried ones," even where other portions of the VWPA provide "nearly identical substantive protections for salaried and hourly employees," would "undermine the statute's remedial purpose," which could not be the General

---

[5] But the VWPA does not apply if "the failure to pay was because of a bona fide dispute between the employer and its employee." Va. Code. Ann. § 40.1-29(E).  Here, there is no evidence or allegation of, nor does the undersigned find that, Defendant's failure to pay was the result of a bona fide dispute between the parties.

9

Assembly's intent.[6] *Campbell v. Groundworks Operations, LLC*, 908 S.E. 2d 136, 141 (Va. App. 2024). The undersigned agrees with the reasoning of the Virginia Court of Appeals and finds the same here.

Second, Defendant is liable for its failure to pay Plaintiff money deducted from Plaintiff's earned wages into Plaintiff's HSA account at the end of his employment. This money clearly constitutes a "wage," or "compensation given to a hired person for his or her services," for purposes of the VWPA because if Plaintiff had not elected to participate in the HSA plan, the money would never have been deducted from his pay and would simply have been part of his regular salary, which is paid by Defendant to compensate Plaintiff for the work he performed. *See id*. (collecting cases) (citing *Commonwealth Dep't of Transp. v. Swiney*, 477 S.E.2d 777 (1996)); *see also Taber v. Cascade Designs, Inc.*, 706 F. Supp. 3d 1144 (W.D. Wash. 2023) (employees' own HSA contributions constitute "wages" under Washington Wage Rebate Act because "Plaintiff's HSA contributions are simply money deducted from her salary. If Plaintiff did not opt for an HSA, she still would have been paid the money that otherwise would have been contributed to her HSA account."). Supporting this finding is the Virginia Department of Labor and Industry's Division of Labor and Employment Law March 2022 Field Operations Manual's ("Manual") inclusion of "money withheld and not remitted to a proper entity" as "Money that is Collectible" under the Act, citing the related example of "when health premiums are deducted from an employee's wages and the employer fails to distribute such amounts to the insurance carrier." Manual § 1.00(D), https://perma.cc/S84Y-2QXC; *Campbell*, 908 S.E. 2d at 142 (quoting *Bohle v. Henrico Cnty. Sch. Bd.*, 431 S.E. 2d 36 (1993) ("The construction afforded by public officials

---

[6] The VWPA does not define "salary" or "wages." But numerous state and federal courts have applied the broad definition of "wages" as "compensation given to a hired person for his or her services." *Campbell*, 908 S.E. 2d at 141 (collecting cases). Under this definition, it is clear that Plaintiff's unpaid salary also constitutes "wages" for purposes of the VWPA.

10

charged with its administration is entitled to be given weight by the courts.")) (recognizing inclusion of commissions within VWPA "wages" supported by the Manual).

Third, Defendant is liable for its failure to pay Plaintiff his earned, accrued, and unused PTO at the end of his employment. Once more, accrued, unused PTO that is earned pursuant to an express employer policy providing that the employee is entitled to a payout of the full value of such PTO at the conclusion of their employment is clearly "compensation given to a hired person for his or her services" recoverable as wages under the required liberal construction of the VWPA given its remedial purpose.[7] *See Campbell*, 908 S.E. 2d at 142 (citing *Pompell v. Commonwealth*, 899 S.E.2d 51 (2024); *In re Green*, 34 F. Supp. 791, 793 (W.D. Va. 1940) ("'wages' must be given certainly the widest scope which is at all compatible with reason" to accomplish the law's public policy purposes). Given Defendant's clearly known policy (pursuant to the agreed compensation plan) of paying out such PTO, it must be considered a vested compensatory right as opposed to some incidental fringe or contingent benefit. This understanding is confirmed by the Manual, which disclaims "[f]ringe benefits" such as "[v]acation pay" or "[a]ny other benefit provided for

---

[7]   The undersigned is aware that some case law (not binding on this Court) suggests that PTO should not be considered "wages" under the VWPA, however, the undersigned finds the weight of the authority to the contrary and, in any event, the facts of this case are materially different.

In *Lundberg v. Delta Response Team, LLC*, the District Court of the Western District of Virginia held that "the VWPA does not apply to the PTO claimed by [plaintiff] based on the language in the statute and specifically the chosen terminology of 'wages,'" noting that the VWPA provided for recovery of the value of "wages earned" and "wages due for work performed prior to termination." 2024 WL 1676806, at *8 (W.D. Va. April 18, 2024). "Thus, the language used in the VWPA allows an employee to claim payment for time actually worked, not holiday, sick or other PTO." *Id.*; *see also id.* (citing *Racklin v. Zeta Glob. Corp.* 628 F. Supp. 3d 625, 647 (E.D. Va. 2022) (Trenga, J.)). However, the plaintiff emergency medical technician in *Lundberg* took a leave of absence to seek therapy after allegedly suffering unfair employment treatment and because of COVID, and even though the defendant months later removed plaintiff from its list of affiliated employees filed with the state, defendant never informed the plaintiff that she had been terminated and she continued to accrue vacation leave time in its system. *Id.* at *2. Thus, because the plaintiff had not been working, the PTO sought in *Lundberg* was not compensatory and could not be considered "wages." On the other hand, in the instant case, Plaintiff earned and accrued the PTO at issue pursuant to actual work performed; *see also Racklin*, 628 F. Supp. 3d at 645–47 (no VWPA claim for unpaid salary where plaintiff "did not render any services" to defendant after beginning unpaid administrative leave and unauthorized paid time off and "thus, did not earn any wages"). Moreover, *Lundberg* does not explicitly recognize the remedial nature of the VWPA, which underscored the Court of Appeals of Virginia's later-issued opinion in *Campbell*.

11

by company policy" as "uncollectible," but separately addresses "Paid Time-Off Accrual" and importantly provides that "[t]he Department will not pursue cases involving *unpaid paid time off that had accrued by the time the employee has left the employer. The employee must pursue those claims individually*." Manual §§ 1.00(E), 8.0(A)(3) (emphasis added).

Fourth, Defendant is liable under the VWPA for failure to make 401(k) matching contributions.[8] The undersigned's efforts revealed little authority on whether a 401(k) matching contribution is recoverable under the VWPA (or analogous wage payment acts of other states). Nevertheless, the undersigned finds that promised 401(k) match pursuant to a written and agreed compensation plan[9] constitutes compensation for services such that it falls into the broad reading of "wages" required by remedial nature of the VWPA.

Lastly, the undersigned finds that Defendant's violation of the VWPA was made knowingly. Defendant continued to fail to pay Plaintiff the aforementioned salary, HSA deductions, accrued PTO, and the 401(k) matching contributions even after being informed by Plaintiff of such failure to pay. (Dkt. 8-1). Defendant's continued nonpayment without other

---

[8] The Complaint (Dkt. 1 ¶¶ 15–16), Motion for Default Judgment (Dkt. 8 ¶¶ 15–17), and Sworn Declaration of Christopher Barbeau (Dkt. 8-1 ¶¶ 7–10) are somewhat unclear in defining the withheld 401(k) payments as employer matches or amounts deducted from Plaintiff's salary. *See also* Dkt. 14 at 3, 4. Each document uses largely identical language, stating roughly "Defendant offered Plaintiff a 401(k) retirement plan" and that "Defendant promised, withheld, and then failed to pay or contribute earned and/or promised 401(k) contributions to Plaintiff's 401(k)-retirement plan[.]" *Id*. By contrast, Plaintiff clearly denotes the HSA amounts as to be "voluntarily deduct[ed] [] from his paychecks and . . . to pay those same earned wages directly into Plaintiff's [HSA]." (Complaint ¶ 19). Accordingly, the undersigned construes the Complaint to be seeking amounts due from Defendant as 401(k) match. However, the undersigned observes that if Plaintiff were seeking payment of amounts deducted from his wages but not paid into his 401(k), Defendant would be liable for such amounts under the VWPA for the same reasons discussed with respect to HSA above.

[9] On this record, the undersigned does not find that ERISA preclusion applies to foreclose Plaintiff's VWPA or common law contract theories with respect to the 401(k) match, as Plaintiff seeks to enforce an "independent legal duty." *Cotter v. Milly LLC*, 2010 WL 286614, at *7 (S.D.N.Y. Jan. 22, 2010) (collecting cases) (citing *Wharton v. Duke Realty*, 467 F. Supp. 2d 352, 359 (E.DN.Y. 2004)).

remedial action or further communication[10] in light of such notice supports, at minimum, a finding that Defendant acted knowingly. Although the allegation that Plaintiff provided notice to Defendant, upon which Defendant continued nonpayment, is not found in the Complaint such that the Complaint's contentions that Defendant acted "without right, excuse, or justification, intentionally, and maliciously" (Complaint ¶¶ 23, 26) are otherwise conclusory, the undersigned finds Defendant's knowing mental state established in light of Plaintiff's Declaration attached to his Motion for Default Judgment, which is appropriately considered on the current posture.[11]

For the foregoing reasons, the undersigned finds that Plaintiff has sufficiently pleaded a violation of the VWPA and recommends that the Court grant default judgment against Defendant as to Count I.

---

[10] The undersigned observes that there is no allegation that Defendant ever returned communications with Plaintiff regarding payment of wages and further finds that it is reasonable to infer that there was no such return correspondence.

[11] "The Federal Rules of Civil Procedure expressly permit a court, in granting a default judgment, to consider extrinsic evidence to, among other reasons, 'establish the truth of any allegation.'" *In re Wolf*, 644 B.R. 725, 755 (N.D. Ill. 2022). While some courts hold that a court should not look beyond the "four corners of the complaint" in assessing liability under Rule 55(b)(2) based on the rationale that "a defendant should be able to review a complaint, and, if it is confident that the complaint fails to state a claim for relief, elect to conserve its resources and not defend the case," the undersigned finds that "this rationale does not apply with great force" where a movant properly serves extrinsic evidence relied upon in the default judgment motion such that "it would not be unfair to say that [defendant] should have reassessed the strength of [plaintiff's] case upon receipt" of the evidence. *See Ayers v. Receivables Performance Management, LLC*, 2016 WL 5402962, at *5 (E.D. Mich. Sept. 28, 2016) (collecting cases); *United Staes v. Bayley*, 2023 WL 3093126, at *6 n.4 (W.D. Wash. April 27, 2023) (considering photographs submitted in support of motion for default judgment, which was properly served with the motion for default judgment by ECF, email, and mail, based on *Ayers*); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, 2014 WL 1310296, at *4 (E.D.N.Y. March 11, 2014) ("[m]oreover, it would be inefficient to require plaintiff to file an amended complaint to add the additional allegations contained in his affidavit [because Rule 5(a)(2) excuses service of such an amended complaint on a defendant in default]").

For the foregoing reasons, and because Plaintiff's Motion for Default Judgment and all attachments thereto was served on Defendant by mail in accordance with Rule 5(b)(2)(C) even where not technically required (Dkt. 8 at 9), the undersigned finds that it is appropriate to consider Plaintiff's declaration.

*B. The Court Need Not Consider Count II (Breach of Contract) And Should Dismiss It.*

Count II of the Complaint asserts a claim against Defendant for breach of contract in the alternative to Count I, "should the Court find any amount sought by Plaintiff . . . does not constitute wages under the VWPA." (Complaint ¶¶ 27–30). Because (1) Count I states a claim for violation of the VWPA with respect to all amounts sought by Plaintiff; (2) Plaintiff pled Count II only in the alternative in the case that Count I was unsuccessful to some extent; (3) Plaintiff did not move for default judgment on Count II; and (4) any relief available pursuant to Count II would be duplicative of that permitted by Count I, the undersigned recommends that the Court dismiss Count II.

## VI. REQUESTED RELIEF

On its current Motion for Default Judgment, Plaintiff requests (1) an award of unpaid wages, trebled for the knowing violation of the VWPA (Count I), in the total amount of $169,800; (2) an award of reasonable attorneys' fees and costs as provided by the VWPA (Count I), in the amount of $7,065 and $494 respectively; and (3) pre- and post-judgment interest.[12] (Complaint at 5, 6; Dkt. 8 at 6–8). The undersigned will address each request in turn.

*A. VWPA Unpaid Wages and Treble Damages (Count I).*

Plaintiff requests an award of unpaid wages, trebled for the knowing violation of VWPA established in Count I. The undersigned finds that Plaintiff has sufficiently established by affidavit that he is owed (1) salary wages in the amount of $9,000; (2) 401(k) matching contributions in the amount of $39,000; (3) HSA contributions deducted from his salary in the amount of $600; and

---

[12] Plaintiff did not explicitly request interest on the current Motion for Default Judgment, but did request it in the Complaint. As discussed below, pre-judgment interest is not available for knowing VWPA violations, and post-judgement interest on the Court's award must be awarded as a matter of federal law.

14

(4) accrued PTO in the amount of $8,000.[13] (Dkt. 8-1). This comes to a total of $56,600. Moreover, the VWPA provides for treble damages for violations that are committed "knowingly," as the undersigned has found above. VA. Code. Ann. § 40.1-29(J). Accordingly, the undersigned finds that the requested total damages of $169,800 (which is $56,600 times three), is appropriate and should be awarded to Plaintiff.

B. *VWPA Attorneys' Fees and Costs.*

Plaintiff also seeks recovery of his attorneys' fees ($7,065) and costs ($494) pursuant to his VWPA claim. The VWPA provides for "reasonable attorney fees and costs" where a plaintiff establishes a knowing violation. VA. Code. Ann. § 40.1-29(J).

Virginia law requires that a prevailing party entitled to an award of attorneys' fees has the "burden of proving that the requested fees are reasonable and that they were necessary." *Sidya v. World Telecom Exchange Communications, LLC*, 301 Va. 31, 46 (2022) (collecting cases); *Id*. ("[A fee award] must be supported by sufficient evidence that tailors the fees to the specific successful claims triggering the right to such an award . . . the prevailing party is entitled to an award . . . only for those claims for which (a) there is a contractual or statutory basis for such an award and (b) the party has prevailed"). The Virginia Supreme Court has "identified seven factors for courts to consider in determining a reasonable attorneys' fee award":

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

---

[13] In wage cases like this one, it is common for damages on default judgment to be adequately established by "affidavits and documentary damages." *See, e.g., Fernandes v. OJ Installations, LLC*, 2022 WL 3571098, at *2 (N.D. Ga. June 29, 2022).

*Sines v. Kessler*, 2023 WL 2388050, at *10 (W.D. Va. March 7, 2023) (cleaned up) (citing *Lambert v. Sea Oats Condo. Ass'n*, 798 S.E. 2d 117, 184 (Va. 2017)) (applying Virginia standard in lieu of Fourth Circuit standard on state law claims).[14] A court is not required to "consider all these factors in every situation." *West Square, LLC v. Communication Techs., Inc.*, 274 Va. 425, 424 (2007) ("particular factors may have added or lessened significance depending on the circumstances of each case"). Ultimately, the amount of recoverable attorneys' fees rests within the sound discretion of the trial court. *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 180 (2006).

Plaintiff's counsel has provided billing records and a sworn declaration in support of the request for fees and costs. (Dkt. 8-2). Applying a lodestar analysis, the undersigned finds that Plaintiff's request is reasonable and should be granted. *See Airlines Reporting Corp. v. Cartagena Travel and Tours, Inc.*, 2012 WL 13019066, at *11 (E.D. Va. Aug. 3, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the . . . reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate . . [w]hen the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Plaintiff's counsel performed a total of 15.70 hours of work at a rate of $450 per hour in this matter. In support of the reasonableness of his hourly rate, Plaintiff's counsel, by his own declaration, offers his credentials (i.e., barred since 2007, practicing in numerous area courts, focused exclusively on employment law for his entire legal career, named partner at his employment law firm, involved in professional organizations), submits that his customary hourly

---

[14] Although Plaintiff addressed the Fourth Circuit standard for reasonable attorneys' fees in his brief in support of default judgment (Dkt. 8 at 7, 8), Virginia law, and not federal law, must be applied to determine the attorneys' fees to be awarded as Count I is a state statutory claim which the Court is addressing on diversity. *See, e.g., Sines*, 2023 WL 2388050, at *10; *ACL Realty Corp v. Com Properties, LLC*, 2007 WL 2900097, at *2 (W.D. Va. Oct. 3, 2007) (applying VA standard to request for fees on contract claim); *Airlines Reporting Corp.* 2012 WL 13019066, at *8 (same). Nevertheless, the considerations between the two standards are quite similar.

16

rate is $450, and submits that based on his review of attorney's fees petitions before this Court, his hourly rate is reasonable and consistent with that of other Plaintiff-side employment attorneys seeking attorneys' fee awards in the Eastern District of Virginia. (Dkt. 8-2 at 1, 2).

While affidavits of comparable third-party counsel not involved in this litigation are preferred over the declaration of Plaintiff's counsel himself, the undersigned finds Plaintiff's counsel's $450 hourly rate to be reasonable when considering the totality of circumstances, including the nature of the case, counsel's experience, and rates established for similarly positioned counsel and matters in this district. The undersigned finds that no adjustment to the hourly rate should be applied.

Further, upon review of all relevant pleadings and Plaintiff's counsel's time records (Dkt. 8-2 at 3), the undersigned finds that all time expended by counsel is reasonable, necessary, and appropriate for the case. The undersigned also finds that no adjustment to the hours claimed should be applied.

Accordingly, the undersigned finds that the lodestar fees amount of $7,065, resulting from multiplying the $450 hourly rate by 15.70 hours worked, is reasonable, need not be further adjusted, and should be awarded to Plaintiff.[15]

---

[15] The undersigned observes that counsel's time records do not delineate between time spent on the VWPA claim and the breach of contract claim. Time spent on the latter is not recoverable as the contract claim was not successful, there is no indication of any contractual provision providing for fees, and Virginia does not permit recovery for advocacy "intertwined" between claims for which fees are available and those for which fees are otherwise not available. *See, e.g.*, *CSX Transportation, Inc. v. Norfolk Southern Railway Co.*, 693 F. Supp. 3d 581, 588–89 (E.D. Va. 2023) (collecting cases). Nevertheless, the undersigned does not find that any adjustment to the hours claimed should be made on this basis, as counsel declares that he has "cut all duplicative unnecessary, wasteful, or improperly billed work performed on this matter," (Dkt. 8 ¶ 13) and it appears that any efforts on the contract claim were *de minimis* at most. (*See* Complaint ¶¶ 27–30).

As for costs, Plaintiff seeks recovery of $494 resulting from the filing of the Complaint ($405) and service of process ($89). (Dkt. 8-2 at 3). The undersigned again finds that these costs are reasonable and necessary to this action and should be awarded to Plaintiff.

*C. Pre- and Post-Judgment Interest.*

Finally, Plaintiff did not explicitly request pre- or post-judgment interest on the current Motion for Default Judgment but did request it in the Complaint. For the following reasons, this omission is immaterial and the undersigned finds that an award of post-judgment, but not pre-judgment interest is appropriate.

First, by its plain text, "the VWPA omits the award of pre-judgment interest when a court finds that the employer knowingly failed to pay wages to an employee," and therefore damages may be trebled, as established here with respect to Count I. *Hudson v. Dunn*, No 1:23-cv-781-RDA-WBP, 2024 WL 2870845, at *10 (E.D. Va. March 15, 2024) (citing Va. Code Ann. § 40.1-29(J)). This is so even while the VWPA requires an award of pre-judgment interest for non-knowing violations, where damages may not be trebled. *See* Va. Code. Ann. § 40.1-29(J). Accordingly, pre-judgment interest is not available in this action.

Second, the undersigned finds that an award of post-judgment interest on the Court's entire award, including VWPA damages and attorneys' fees and costs, is warranted to ensure that Plaintiff receives the proper value of his award regardless of when he is able to collect it, and is in fact mandatory under federal law. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *ExxonMobil Oil Corp.*, 221 F. Supp. 3d at 769 (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F. 2d 1017, 1031 (4th Cir. 1993) ("federal law mandates the awarding of post judgment interest")); *PharMecia East, LLC v. Healthlink of Va. Shores, LLC*, 2020 WL 877983, at *3 (E.D. Va. Feb. 20, 2020) ("In the Fourth Circuit, post-

judgment interest can be awarded on the entire amount the court awards."); *Barrella v. Village of Freeport*, 43 F. Supp. 3d 136, 195 (E.D.N.Y. 2014) ("Post-judgment interest is available for an award of attorneys' fees arising out of a judgment in the district court.").

## VII. CONCLUSION

For the foregoing reasons, the undersigned United States Magistrate Judge recommends that Plaintiff Christopher Barbeau's Motion for Default Judgment (Dkt. 8) be **GRANTED IN PART** and **DENIED IN PART** as to Defendant Siege Technologies. Specifically, the undersigned recommends that the Court:

- **GRANT** the Motion for Default Judgment as to Defendant Siege Technologies, LLC on Count I (knowing VWPA violation);

- **AWARD** Plaintiff $169,800 in trebled statutory damages pursuant to Count I (knowing VWPA violation);

- **AWARD** Plaintiff attorney's fees in the amount of $7,065, and litigation costs in the amount of $494 pursuant to Count I (knowing VWPA violation);

- **AWARD** Plaintiff post-judgment interest on this Court's entire award of damages and fees and costs, pursuant to 28 U.S.C. § 1961(a);

- **DENY** Plaintiff's Motion for Default Judgment (Dkt. 8) in all other respects; and

- **DISMISS** this civil action in all other respects.

## VIII. NOTICE

Plaintiff is directed to serve by registered mail a copy of this Report and Recommendation on Defendant within seven (7) days of entry of this Report and Recommendation. Plaintiff is further directed to file a declaration certifying service of this Report and Recommendation on Defendant via the Court's electronic filing system within ten (10) days of entry of this Report and

Recommendation.  The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
United States Magistrate Judge

July 1, 2025
Alexandria, Virginia